Estado Libre Asociado de Puerto Rico
TRIBUNAL DE APELACIONES
PANEL IX

| MUNICIPIO DE SAN LORENZO<br><br>PETICIONARIO<br><br>V.<br><br>RAMÓN GALARZA REYES, JOHN DOE, RICHARD ROE Y OTROS<br><br>RECURRIDOS | TA2026CE00309 | *Certiorari* procedente del Tribunal de Primera Instancia, Sala Superior de San Lorenzo<br><br>Civil Núm.: SL2025CV00215<br><br>Sobre: Expropiación Forzosa |
| --- | --- | --- |

Panel integrado por su presidenta, la juez Brignoni Mártir, el juez Salgado Schwarz, y la juez Aldebol Mora

**Brignoni Mártir, Juez Ponente**

## SENTENCIA

En San Juan, Puerto Rico, a 27 de abril de 2026.

Comparece ante nos, el Municipio de San Lorenzo. Solicita nuestra intervención para que dejemos sin efecto la *"Orden"* emitida y notificada el 20 de febrero de 2026, por el Tribunal de Primera Instancia, Sala Superior de San Lorenzo. Mediante esta, el foro primario le ordenó al Municipio de San Lorenzo que consignara en el Tribunal la cantidad de $38,600.00 en concepto de justa compensación. Además, determinó que el Municipio no puede descontar de la cantidad a consignar los gastos de limpieza y mantenimiento y las cuantías adeudadas en concepto de multas y al CRIM. Así pues, concluyó que está impedido de dictar sentencia hasta tanto el Municipio de San Lorenzo no cumpla con lo antes esbozado.

Por los fundamentos que expondremos a continuación, *expedimos* el recurso de *certiorari* presentado y con ello *revocamos* la determinación recurrida.

### I.

El 4 de junio de 2025, el Municipio de San Lorenzo presentó ante el tribunal de instancia una *"Petición"* de expropiación forzosa. Mediante esta, el referido Municipio solicitó que se le conceda el dominio de una finca que

ubica en la Calle Doctor Veve Calzada de dicho Municipio. Adujo, que el aludido bien inmueble fue declarado estorbo público en virtud de la Ordenanza Municipal Núm. 33-OT, Serie 2020-2021. Expuso, que la finca en cuestión no consta inscrita en el Registro de la Propiedad. Estimó el pago de la justa compensación en la cantidad de $38,600.00. Esta cuantía surge de la tasación realizada a la propiedad en el año 2024. Empero, sostuvo que a la referida compensación se le deben restar una serie de gastos incurridos por el Municipio tales como los pagos por labores de limpieza y mantenimiento; pago de deudas, intereses y penalidades del Centro de Recaudación de Ingresos Municipales ("CRIM"); y las deudas en concepto de multas administrativas impuestas a tenor de la Ordenanza Núm. 33-OT Serie 2020-2021.[1]

Aseveró, que luego de realizar el anterior cómputo de gastos el pago de la justa compensación queda reducido a la cantidad de $1,335.98. Asimismo, sostuvo, que el Municipio no está obligado a consignar el dinero de la justa compensación hasta tanto la parte demandada -aquí recurrida- comparezca al pleito, según lo dispuesto en el Artículo 2.018(a)(10) del Código Municipal de Puerto Rico, Ley Núm. 107-2020, según enmendada, 21 LPRA sec. 7183. Junto a la referida *"Petición,"* el Municipio de San Lorenzo presentó una "*Moción para la Adquisición y Entrega Material de la Propiedad,"* a los efectos de solicitarle al foro primario que ordene que el bien inmueble en controversia sea entregado al Alcalde del referido Municipio.

La *"Petición"* que hoy nos ocupa originalmente fue incoada en contra del señor Ramón Galarza Reyes (en lo sucesivo, "señor Galarza Reyes"). Posteriormente, el 18 de junio de 2025, la referida Solicitud fue enmendada para acumular en el litigio a la Sucesión de Galarza Reyes. Así las cosas, el 9 de septiembre de 2025, el foro recurrido notificó una *"Orden Emplazamiento por Edicto,"* por medio de la cual declaró *Ha Lugar* la

---

[1] Los descuentos propuestos se desglosan a continuación: $8,708.10 en concepto de gastos administrativos en labores de limpieza y mantenimiento; $13,555.92 en concepto de deuda contributiva ante el CRIM; y $15,000 en concepto de la multa impuesta por el Municipio.

*"Moción Solicitando la Expedición de Emplazamiento por Edicto,"* presentada por el Municipio de San Lorenzo. Acto seguido, el 11 de septiembre de 2025, el Municipio de San Lorenzo presentó una segunda *"Petición Enmendada,"* a los fines de añadir al CRIM como parte codemandada.

Tras varios trámites procesales que no son necesarios de pormenorizar, el 24 de noviembre de 2025, el foro primario notificó una *"Resolución."* Mediante esta, declaró que la finca quedó expropiada a favor del Municipio de San Lorenzo. En consecuencia, decretó el pleno dominio del referido Municipio sobre la propiedad objeto de litigio y ordenó que las personas con interés debían entregar la posesión material de dicha finca.

Posteriormente, el 2 de diciembre de 2025, el Municipio de San Lorenzo informó que había completado el diligenciamiento del emplazamiento por edicto. El mismo día, el foro primario anotó la rebeldía del señor Galarza Reyes y su Sucesión. Luego, el 10 de diciembre de 2025, el foro recurrido notificó una *"Orden"* mediante la cual anotó la rebeldía del CRIM.

Luego de varias incidencias procesales que no son pertinentes al asunto ante nuestra consideración, el 19 de febrero de 2026, el foro recurrido notificó una nueva *"Orden"* en la que le concedió al Municipio San Lorenzo un término de diez (10) días para someter proyecto de sentencia.

El mismo día, el Municipio presentó el proyecto que el foro primario le requirió. En este calculó la justa compensación a satisfacer en la cantidad total de $1,335.98. Dicha suma dinero es el valor que resulta luego de que el Municipio de San Lorenzo aplicara las aludidas deducciones relativas a multas administrativas, contribuciones del CRIM y gestiones de limpieza y mantenimiento.

Tras evaluar el proyecto de sentencia solicitado, el 20 de febrero de 2026, el foro recurrido notificó la *"Orden"* que hoy es objeto de revisión. Mediante esta, le requirió al Municipio de San Lorenzo que consignara en el Tribunal la cantidad de $38,600.00. Además, determinó que el Municipio

no puede descontar de la cantidad a consignar los gastos de limpieza y mantenimiento; las cantidades adeudadas en concepto de multas; y las deudas contributivas sobre la propiedad. Así pues, concluyó que está impedido de dictar sentencia hasta tanto el Municipio de San Lorenzo no cumpla con lo antes esbozado.

Oportunamente, el 24 de febrero de 2026, el Municipio de San Lorenzo presentó *"Moción de Reconsideración."* En la misma fecha, el foro primario notificó que declaró *No Ha Lugar* la referida moción.

En desacuerdo, el 12 de marzo de 2026, el Municipio de San Lorenzo presentó ante este Tribunal un auto de *certiorari.* Mediante este, esbozó los siguientes señalamientos de error:

> Primer Error: Erró el TPI al ordenar al Municipio consignar la suma de $38,600.00, conforme a la tasación, toda vez que la acción de expropiación forzosa fue incoada al amparo del Artículo 2.018 del Código Municipal de Puerto Rico y no a tenor con las disposiciones del Artículo 4.010 del mismo cuerpo legal.

> Segundo Error: Erró el TPI al denegar la solicitud del Municipio de deducir de la justa compensación las deudas, gastos y gravámenes correspondientes a las multas, cargas del CRIM y costas de limpieza y mantenimiento incurridos para eliminar la condición de estorbo público que afectaba la propiedad objeto de expropiación, conforme lo autoriza el Artículo 4.010 del Código Municipal de Puerto Rico.

> Tercer Error: Erró el TPI al fundamentar su negativa a dictar sentencia en las disposiciones de la Sección 9 del Artículo II de la Constitución del Estado Libre Asociado de Puerto Rico, aplicando erróneamente dicho precepto constitucional como impedimento para acoger el remedio requerido.

El mismo día, el Municipio de San Lorenzo presentó "*Moción en Auxilio de Jurisdicción."* Nos solicitó que paralizáramos el curso de los procedimientos ante el tribunal de instancia hasta tanto resolvamos la presente controversia. En la aludida fecha, notificamos que declaramos *Ha Lugar* la petición de auxilio. Juntamente con dicha notificación le concedimos a la parte recurrida un término de treinta (30) días para presentar su alegato en oposición.

**II.**

**A.    Recurso de Certiorari:**

El *certiorari* es un recurso extraordinario mediante el cual un tribunal de jerarquía superior puede revisar a su discreción una decisión de un

tribunal inferior. *Alio v. Santiago Chardón y otros*, 2026 TSPR 113; *Rivera et al v. Arcos Dorados et al.*, 212 DPR 194, 207 (2023); *Orthopedics Prod. Of Puerto Rico, LLC v. Medshape, Inc.*, 207 DPR 994, 1004 (2021); Art. 670 del Código de Enjuiciamiento Civil de 1933, conocido como Ley de Recursos Extraordinarios, 32 LPRA sec. 3491. La característica distintiva del *certiorari* "se asienta en la discreción encomendada al tribunal revisor para autorizar su expedición y adjudicar sus méritos". *Íd.* Ahora bien, el ejercicio de esta discreción no es absoluto. Por ello, la Regla 52.1 de Procedimiento Civil, 32 LPRA Ap. V, R. 52.1, establece una serie de instancias en las que los foros apelativos pueden ejercer su facultad revisora:

> El recurso de certiorari para revisar resoluciones u órdenes interlocutorias dictadas por el Tribunal de Primera Instancia, solamente será expedido por el Tribunal de Apelaciones cuando se recurra de una resolución u orden bajo las Reglas 56 y 57 o de la denegatoria de una moción de carácter dispositivo. No obstante, y por excepción a lo dispuesto anteriormente, el Tribunal de Apelaciones podrá revisar órdenes o resoluciones interlocutorias dictadas por el Tribunal de Primera Instancia cuando se recurra de decisiones sobre la admisibilidad de testigos de hechos o peritos esenciales, asuntos relativos a privilegios evidenciarios, anotaciones de rebeldía, en casos de relaciones de familia, en casos que revistan interés público o en cualquier otra situación en la cual esperar a la apelación constituiría un fracaso irremediable de la justicia.

La Regla 40 del Reglamento del Tribunal de Apelaciones, según enmendada, *In re Aprob. Enmdas. Reglamento TA,* 2025 TSPR 42, pág. 62-63, 215 DPR ___ (2025), delimita los criterios para la expedición de un auto de *certiorari.* Así pues, estas consideraciones "orientan la función del tribunal apelativo intermedio para ejercer sabiamente su facultad discrecional". *Rivera et al v. Arcos Dorados et al*, supra. La aludida regla permite que el análisis del foro apelativo intermedio no se efectúe en el vacío ni se aparte de otros parámetros al momento de considerar los asuntos planteados. *BPPR v. SLG Gómez-López*, 213 DPR 314, 337 (2023); *Rivera et al v. Arcos Dorados et al*, supra; *Torres González v. Zaragoza Meléndez*, 211 DPR 821, 848 (2023); *800 Ponce de León v. American International*, 205 DPR 163, 176 (2020). De conformidad con lo anterior, la Regla 40, *supra*, dispone los siguientes criterios:

**A.** Si el remedio y la disposición de la decisión recurrida, a diferencia de sus fundamentos, son contrarios a derecho.

**B.** Si la situación de hechos planteada es la más indicada para el análisis del problema.

**C.** Si ha mediado prejuicio, parcialidad o error craso y manifiesto en la apreciación de la prueba por el Tribunal de Primera Instancia.

**D.** Si el asunto planteado exige consideración más detenida a la luz de los autos originales, los cuales deberán ser elevados, o de alegatos más elaborados.

**E.** Si la etapa del procedimiento en que se presenta el caso es la más propicia para su consideración.

**F.** Si la expedición del auto o de la orden de mostrar causa no causan un fraccionamiento indebido del pleito y una dilación indeseable en la solución final del litigio.

**G.** Si la expedición del auto o de la orden de mostrar causa evita un fracaso de la justicia.

Los foros revisores no debemos intervenir en las determinaciones de hechos del tribunal de instancia, "salvo que se pruebe que dicho foro actuó con prejuicio o parcialidad o incurrió en craso abuso de discreción o en error manifiesto." *Citibank v. ACBI*, 200 DPR 724, 736 (2018). Esta norma permite que el foro primario actúe conforme a su discreción judicial, que es la facultad que tiene "para resolver de una forma u otra, o de escoger entre varios cursos de acción". Id. pág. 735; *Graciani Rodríguez v. Garage Isla Verde*, LLC, 202 DPR 117, 132 (2019). El ejercicio esta discreción "está inexorable e indefectiblemente atado al concepto de la razonabilidad". Íd.; *Pueblo v. Hernández Villanueva*, 179 DPR 872, 890 (2010). Así pues, "la discreción es una forma de razonabilidad aplicada al discernimiento judicial para llegar a una conclusión justiciera". *Íd; Medina Nazario v. McNeil Healthcare LLC*, 194 DPR 723, 729 (2016). No obstante, un tribunal incurre en abuso de discreción cuando ignora sin fundamento un hecho material, concede demasiado peso a un hecho inmaterial, y fundamenta su determinación en ese hecho irrelevante, o cuando a pesar de examinar todos los hechos del caso hace un análisis liviano y la determinación resulta irrazonable. *íd.* pág. 736. En esos casos, los foros apelativos ostentamos la facultad discrecional para expedir el recurso de *certiorari* y ejercer nuestra función revisora.

**B.      Expropiación Forzosa:**

Nuestra Ley General de Expropiación Forzosa, Ley de 12 de marzo de 1903, según enmendada, establece, que la propiedad particular podrá ser expropiada cuando haya sido declarada su utilidad pública por el Gobernador o el funcionario o la agencia así designada. 32 LPRA sec. 2902. La propiedad privada se puede ocupar o destruir para los fines de construcción de vías terrestres; líneas férreas; plazas; puentes; acueductos; parques públicos; y cuando la propiedad particular haya sido declarada estorbo público, entre otros fines. 32 LPRA sec. 2903. Cabe mencionar, que el procedimiento de expropiación forzosa es uno de naturaleza *in rem*. 32 LPRA sec. 2905. Las personas que tuvieren o pretendieren tener cualquier interés en la propiedad a expropiar podrán comparecer a la acción judicial de expropiación y alegar su derecho. 32 LPRA sec. 2906.

En el procedimiento que se entable, la parte demandante deberá presentar una declaración para la adquisición y entrega material de la propiedad objeto de expropiación, mediante la cual declare su pretensión de expropiar para uso del Gobierno. 32 LPRA sec. 2907; *ELA v. El Ojo de Agua Development,* 205 DPR 502, 520 (2020). Tan pronto se radique la referida declaración y se deposite en el tribunal la cantidad estimada como compensación el Estado quedará investido con el título de pleno dominio de la propiedad objeto de expropiación. 32 LPRA sec. 2907. A su vez, el derecho a justa compensación quedará investido en las personas a quienes corresponda. *Id.* La justa compensación deberá determinarse y adjudicarse en el procedimiento de expropiación, y decretarse por la sentencia que recaiga en el mismo. *Id.* **"El tribunal tendrá facultad para dictar las órdenes que fueren justas y equitativas en relación con los gravámenes y otras cargas que pesen sobre las propiedades, si algunos hubiere."** (Énfasis suplido). *Id.* **En la sentencia definitiva,** se determinará si al demandante le asiste o no el derecho a adquirir la propiedad objeto de expropiación, **y se fijará "la cantidad que el**

**demandante deberá satisfacer al demandado, resolviéndose en dicha sentencia el derecho de cada una de las partes."** (Énfasis suplido). 32 LPRA sec. 2911; *Mun. de Guaynabo v. Adquisición M²,* 180 DPR 206, 219 (2010).

Por otro lado, el Artículo 1.008 del Código Municipal de Puerto Rico, Ley Núm. 107-2020, según enmendada, 21 LPRA sec. 7013, establece que los municipios tienen la facultad de llevar a cabo expropiaciones forzosas. En específico, el inciso (c) del referido Artículo dispone que los municipios podrán "[e]jercer el poder de expropiación forzosa, dentro de sus respectivos límites territoriales, por cuenta propia o a través de lo dispuesto en el Artículo 2.018 de este Código, las leyes generales y órdenes ejecutivas especiales y vigentes que sean aplicables." *Id.* En virtud de este poder delegado, los "municipios podrán adquirir por cualquier medio legal, incluyendo expropiación forzosa, los bienes y derechos o acciones sobre éstos que sean necesarios, útiles o convenientes para su operación y funcionamiento o para el adecuado ejercicio de las funciones de su competencia y jurisdicción." 21 LPRA sec. 7182.

Es preciso mencionar, que las disposiciones contenidas en la Ley General de Expropiación Forzosa aplicaran de forma supletoria en los casos en que los municipios ejerzan su facultad de expropiación. 21 LPRA sec. 7183. En estos escenarios, los municipios podrán expropiar la propiedad privada cuando la misma haya sido declarada estorbo público; por motivos de favorabilidad para el interés colectivo; y para cualquier otro propósito de utilidad que sea así declarado por la Legislatura Municipal, entre otros. *Id.* No podrá ser objeto de revisión por los tribunales el uso para el cual se va a destinar la propiedad objeto de expropiación; la naturaleza o extensión del derecho a adquirirse; la cantidad de terreno a expropiarse; y la necesidad o lo adecuado del sitio que se expropia. *Id.* Sin embargo, el titular que posea el dominio del bien a expropiar tiene derecho a ser notificado adecuadamente del proceso y comparecer al tribunal para exponer sus defensas en torno a la utilidad pública del bien en controversia.

*Id.* Además, los municipios tienen el deber de identificar a las personas que tienen algún interés o derecho sobre la propiedad. *Id.*

En cuanto a la transmisión de la titularidad a favor de un municipio, el Artículo 2.018(a)(10) dispone lo siguiente:

> Tan pronto el municipio expropiante radique la Petición de Expropiación junto a la Declaración para la Adquisición y Entrega Material de la Propiedad, conforme a la Regla 58.3 de las Reglas de Procedimiento Civil de Puerto Rico, para beneficio y uso de la persona o personas naturales o jurídicas que tengan derecho a la misma, el título absoluto de dominio de dicha propiedad, o cualquier derecho o interés menor en la misma según quede especificado en la declaración, quedará investido en el municipio expropiante, y tal propiedad deberá considerarse como expropiada y adquirida para el uso del municipio que hubiese requerido la expropiación, y el derecho a justa compensación por la misma quedará investido en la persona o personas a quienes corresponda. Desde ese instante el Tribunal podrá fijar el término y las condiciones bajo las cuales los poseedores de los bienes expropiados deberán entregar la posesión material de los mismos al demandante. **En las expropiaciones de propiedades declaradas estorbos públicos bajo este Código, el municipio no vendrá obligado a consignar dinero alguno sobre la expropiación al radicar la demanda. Dicha obligación comenzará al momento en que él o los demandados comparezcan al tribunal según lo establecido en la Regla 58.5 de Procedimiento Civil de Puerto Rico.** (Énfasis suplido).

La Regla 58.5 de Procedimiento Civil lee como sigue:

> **Si una parte demandada no tiene objeción o defensa que interponer a la adquisición forzosa de su propiedad, podrá notificar su comparecencia designando la propiedad en la cual sostiene que tiene algún derecho.** Subsiguientemente será notificada de todo procedimiento concerniente a esa propiedad. **Si una parte demandada tiene alguna defensa u objeción a la adquisición de la propiedad, notificará su contestación dentro de veinte (20) días después de haber sido notificada de la expropiación o dentro de los treinta (30) días si fue emplazada por edictos**. La contestación identificará la propiedad en la cual la parte demandada sostiene que tiene un derecho, expondrá la naturaleza y el alcance de dicho derecho y expondrá todas sus defensas y objeciones a la adquisición de su propiedad. Una parte demandada renunciará a todas las defensas y objeciones que no sean así presentadas, **pero en la vista de la cuestión de justa compensación haya o no comparecido o contestado con anterioridad a dicha vista, podrá dicha parte demandada ofrecer evidencia en cuanto a la cuantía de la compensación que deba pagarse por su propiedad, y podrá participar en la distribución de la suma adjudicada**. (Énfasis suplido).

Cabe señalar, que "[l]as Reglas de Procedimiento Civil gobernarán el procedimiento para la expropiación forzosa de propiedad mueble e inmueble, excepto en cuanto conflija con las disposiciones de esta regla [Regla 58.1 – 58.9 de Procedimiento Civil] o de una ley especial." 32 LPRA Ap. V, R. 58.1.

**C.      Justa Compensación:**

El derecho a una justa compensación es de rango constitucional. Nuestra Carta Magna establece: "No se tomará o perjudicará la propiedad privada para uso público a no ser mediante el pago de una justa compensación y de acuerdo con la forma provista por ley." Art. II, Sec. 9, Const. ELA [Const. PR], LPRA, Tomo 1. Cabe señalar, que el referido derecho propietario no es absoluto y está sujeto "a ser limitado por el poder del Estado para establecer restricciones sobre la propiedad de los ciudadanos." *Municipio de Río Grande y otro v. Adquisición de Finca 27.661 de la Urbanización Industrial Las Flores, del Término Municipal de Río Grande y otros*, 2025 TSPR 36. Se desprende de la aludida disposición constitucional que para que el Estado pueda válidamente expropiar una propiedad privada, deberá necesariamente pagar una justa compensación; destinar el bien expropiado a un uso o fin público; y proceder con sujeción a las leyes que regulan el procedimiento de expropiación forzosa. *SLG Ortiz-Mateo v. ELA,* 211 DPR 772, 786 (2023).

"La justa compensación a la que tiene derecho la parte con interés en el bien expropiado es aquella que lo coloca en una situación económica equivalente a la que estaría de no haberse expropiado la propiedad." *AAA v. Cortés Flores y otros,* 214 DPR 969, 978 (2024). La cantidad por compensar debe representar el valor en el mercado de la propiedad al tiempo de la incautación. *Id.* Nuestra Jurisprudencia ha definido el término de "valor en el mercado" de la siguiente forma:

> [E]l precio que un comprador en una venta no forzada estaría dispuesto a pagar y aquel en que un vendedor, en las mismas circunstancias, estaría dispuesto a vender, consideradas las condiciones en que se halle el terreno en la fecha de la expropiación, y el uso más productivo a que el dueño pudiere dedicarlo dentro de un futuro razonable cercano. El tribunal, al determinar el valor en el mercado de una finca, debe tomar en consideración todo elemento o indicador que un comprador prudente consideraría. (citas omitidas) Véase, *Pueblo v. Huyke,* 70 DPR 754, 757 (1950); *Adm. De Terrenos v. Nerashford Dev. Corp.,* 136 DPR 801, 809 (1994).

Al calcular el valor de la finca no se debe tomar en consideración las cargas y gravámenes que pesen sobre ella. *Adm. De Terrenos v. Nerashford Dev. Corp.,* supra. Es decir, lo que se debe examinar es "el valor en el mercado de la finca tal como si estuviera libre de gravámenes y

de derechos reales pertenecientes a personas distintas al dueño." *Id.* Ahora bien, la persona acreedora tiene el derecho de satisfacer su acreencia del fondo de la justa compensación hasta la porción que le corresponde. *A.C.T. v. 780.6141M², 165 DPR 121, 130-132 (2005).* Asimismo, la Ley General de Expropiación Forzosa contiene una disposición especial para aquellas expropiaciones iniciadas por los municipios en las que la propiedad privada haya sido previamente declarada estorbo público. La referida disposición lee en lo atinente como sigue:

> Disponiéndose que en el caso de aquellas propiedades que **hayan sido declaradas estorbos públicos, y sean objeto de expropiación por parte de un municipio** por motivo de utilidad pública, **y las mismas deban alguna cantidad por el concepto de contribución sobre la propiedad inmueble o gravámenes por el concepto de multas,** gastos de limpieza y mantenimiento y/o cualquier otro gasto necesario y conveniente a los fines de eliminar la condición de estorbo público o gastos de mitigación de una declaración formal de estorbo público, **la suma de dinero como justa compensación será el valor de tasación menos las deudas por contribución y de los gravámenes, gasto de limpieza y mantenimiento y/o cualquier otro gasto necesario y conveniente a los fines de eliminar la condición de estorbo público correspondientes a la propiedad, incluyendo deudas, intereses, recargos o penalidades**. (Énfasis suplido). Véase, la Sección 5(a)(5), 32 LPRA sec. 2907.

Es meritorio señalar, que existen varias fechas que pueden tener efecto en la justa compensación que el Estado debe consignar. Estas son: (1) el momento de la incautación, (2) la fecha del depósito en los tribunales de la compensación estimada y (3) la del pago total de la compensación finalmente adjudicada. *AAA v. Cortés Flores y otros,* pág. 978. Las referidas fechas son importantes al momento de determinar el pago de intereses por demora a los cuales la parte demandada tiene derecho en virtud del mandato constitucional de justa compensación. *Id,* pág. 978-979. En específico, los intereses se computan desde la fecha en que ocurrió la expropiación hasta la fecha en que se pague totalmente la compensación. *Id.* "En las expropiaciones de hecho o de ocupación física de la propiedad, previo a la consignación de la justa compensación, la fecha de la expropiación será la de la ocupación, y no la fecha en que se radica la demanda". *Id,* citando a C. Torres Torres, *La expropiación forzosa de*

*Puerto Rico: ley, jurisprudencia, estudio y guía práctica*, San Juan, 2002, pág. 179.

Así pues, "la justa compensación deberá determinarse y adjudicarse en el procedimiento de expropiación presentado, y decretarse por la sentencia que recaiga en el mismo, debiendo la sentencia incluir, como parte de la justa compensación concedida, intereses al tipo anual[.]" 21 LPRA sec. 7183. El Artículo 2.018(11) del Código Municipal dispone que estos intereses se deben computar "sobre una base simple, que fije por reglamento la Junta Financiera de la Oficina del Comisionado de Instituciones Financieras y que esté en vigor al momento de dictarse la sentencia, de conformidad con la Regla 44.3 de las Reglas de Procedimiento Civil de Puerto Rico." *Id.*

Una vez completado el proceso de expropiación, el título que adquiere el Estado o municipio es uno declarativo de dominio y con este se extinguen todas las cargas y los derechos que se hayan constituido con anterioridad al inicio del proceso de expropiación forzosa. *A.C.T. v. Iñesta*, 165 DPR 891, 904-905 (2005). Es decir, "lo expropiado queda libre de toda carga, gravamen o limitación, pues la expropiación las extingue, transformándose la titularidad sobre las mismas en un derecho sobre el dinero obtenido como justo precio de la expropiación." *Adm. De Terrenos v. Nerashford Dev. Corp.,* supra, pág. 809.

Cabe mencionar, que el proceso de expropiación es uno en el que se interrelacionan las tres ramas del gobierno. *AAA v. Cortés Flores y otros,* supra, pág. 985. "La legislatura puede determinar qué propiedad privada se necesita para propósitos públicos — ésta es una controversia de carácter político y legislativo; pero cuando se ha ordenado la expropiación, entonces la controversia sobre la compensación es judicial…" (citas omitidas). *E.L.A. v. Rexco Industries, Inc.,* 137 DPR 683, 688-689 (1994). Siendo así, "la determinación final sobre si la compensación es suficiente y razonable recae en la discreción de los tribunales." *AAA v. Cortés Flores y otros,* supra, pág. 982. De manera que, "la compensación debe ser justa, tanto

para el ciudadano cuyo derecho a la propiedad fue intervenido, como para la entidad que la adquiere mediante el desembolso de fondos públicos." *Administración de Terrenos de Puerto Rico v. Ponce Bayland Enterprises, Inc.,* 207 DPR 586 (2021).

### III.

En su comparecencia, el Municipio de San Lorenzo nos invita a intervenir en los méritos de la *"Orden"* recurrida para que la dejemos sin efecto. En su postura, sostiene que el foro primario incidió al requerirle que consignara el dinero del justo valor, puesto que entiende que no tiene obligación de consignar la compensación establecida en nuestra Carta Magna hasta tanto la parte demandada – aquí recurrida - no comparezca al pleito, según las disposiciones de la Regla 58.5 de Procedimiento Civil, *supra*. Además, argumenta que, al armonizar la Ley General de Expropiación Forzosa, *supra,* y las disposiciones aplicables del Código Municipal de Puerto Rico, *supra,* necesariamente se debe concluir que el Municipio de San Lorenzo tiene facultad para descontar de la justa compensación las deudas ante el CRIM; las multas; y los gastos de mantenimiento de la propiedad objeto de expropiación.

Adelantamos que, en efecto, el Municipio no está obligado a consignar el dinero de la justa compensación en esta etapa de los procedimientos. Sin embargo, luego de que el foro primario determine el justo valor a satisfacer, junto a la suma correspondiente en concepto de intereses, y dicte sentencia final a esos fines, el Municipio de San Lorenzo tendrá el deber de consignar la justa compensación así establecida. Agregamos, que a pesar de que el Municipio tiene autoridad en ley para descontar las deudas y gastos señalados, estas deducciones procederán siempre y cuando sean legítimas, probadas y justas para el o los ciudadanos cuyos derechos propietarios fueron intervenidos y para los fondos públicos que se deban desembolsar.

Habiendo establecido lo anterior, determinamos al amparo de la Regla 40 del Tribunal de Apelaciones, *supra*, expedir el presente auto de

*certiorari* y con ello revocamos la *"Orden"* recurrida. A continuación, explicamos los fundamentos para ello.

Surge del marco jurídico expuesto, que el Estado tiene facultad legal para expropiar forzosamente la propiedad privada, previa declaración de utilidad pública, y en observancia a la Ley General de Expropiación Forzosa, las Reglas de Procedimiento Civil y la jurisprudencia aplicable. Asimismo, el Artículo 1.008 del Código Municipal, *supra,* posibilita que los municipios puedan llevar a cabo expropiaciones forzosas. En estos escenarios, las disposiciones de la Ley General de Expropiación Forzosa aplicaran de forma supletoria. 21 LPRA sec. 7183. En lo atinente, nuestros municipios están capacitados para expropiar la propiedad particular que haya sido declarada estorbo público. En este caso, la finca objeto de litigio fue declarada estorbo público por el Municipio de San Lorenzo en virtud de la "*Resolución,"* expedida el 17 de mayo de 2022, por el Director de Procesos de Estorbos Públicos del Municipio.[2]

En lo que concierne a la *"Orden"* objeto de revisión, mediante esta el foro primario le requirió al Municipio de San Lorenzo lo siguiente: a) que consignara en un término de quince (15) días la suma de justa compensación; y b) estableció la suma requerida en la cantidad de $38,600.00. Además, determinó que estaba impedido de dictar sentencia para este caso hasta tanto el Municipio no cumpla con lo ordenado.

En lo que respecta al requerimiento de consignación, el Artículo 2.018(a)(10) establece expresamente que en los casos de expropiaciones forzosas de propiedades declaradas estorbos públicos "el municipio no vendrá obligado a consignar dinero alguno sobre la expropiación al radicar la demanda. Dicha obligación comenzará al momento en que él o los demandados comparezcan al tribunal según lo establecido en la Regla 58.5 de Procedimiento Civil de Puerto Rico." En este caso, la parte demandada-recurrida no ha comparecido al Tribunal de forma alguna. Siendo así, el

---

[2] Véase, Entrada Núm. 1 de SUMAC de TPI, "Exhibit C."

Municipio de San Lorenzo no tiene en estos momentos un deber jurídico de consignar el justo valor de la propiedad objeto de litigio.

Ahora bien, la Ley General de Expropiación Forzosa establece que en la sentencia definitiva se determinará, entre otras cosas, "la cantidad que el demandante deberá satisfacer al demandado, resolviéndose en dicha sentencia el derecho de cada una de las partes." Según el Artículo 42.1 de las Reglas de Procedimiento Civil, el término "sentencia" "incluye cualquier determinación del Tribunal de Primera Instancia que **resuelva finalmente la cuestión litigiosa** y de la cual pueda apelarse." (Énfasis suplido). 32 LPRA Ap. V, R. 42.1. De manera que, una vez el tribunal de instancia determine mediante sentencia la cuantía de justa compensación que habrá de satisfacer el Municipio de San Lorenzo, el referido Municipio tendrá el deber de consignar la cantidad que así disponga el dictamen final. Ello, toda vez que, una sentencia tiene el efecto de dar por concluida la acción judicial instada ante el foro primario.

Por otro lado, el Municipio de San Lorenzo plantea, que la justa compensación de este caso debe de ser aquella suma de dinero que resulte luego de que se descuenten las cuantías relacionadas a deudas contributivas, multas y gastos de mantenimiento. De manera que, sostiene que incidió el foro primario al determinar cómo justa compensación el valor de tasación de la propiedad en cuestión sin antes descontar las aludidas cantidades. Le asiste la razón al Municipio de San Lorenzo. No obstante, los descuentos solicitados no se deben ejecutar de una manera automática ni en abstracción de la discreción que le asiste a los Tribunales en los asuntos relativos a la justa compensación. Veamos.

Como regla general, la justa compensación es aquella suma monetaria que representa el justo valor en el mercado de la propiedad objeto de expropiación al momento de la incautación, sin tomar en consideración las cargas y gravámenes que pesen sobre dicha propiedad. A manera de excepción, la Sección 5(a)(5) de la Ley General de Expropiación Forzosa, *supra*, contempla una disposición especial para

aquellas propiedades que hayan sido declaradas estorbos públicos, como la aquí presente. En virtud de la referida disposición, los municipios pueden descontar de la justa compensación las deudas por contribución. **Así pues, en este caso procede que la deuda contributiva del CRIM que grava la propiedad en cuestión sea descontada de la justa compensación a satisfacer por el Municipio de San Lorenzo**.

En lo que concierne a las **otras deducciones solicitadas**, nótese que la referida Sección dispone que al justo valor se le podrán restar aquellas otras cantidades en concepto de "gravámenes, gasto de limpieza y mantenimiento y/o cualquier otro gasto necesario y conveniente a los fines de eliminar la condición de estorbo público correspondientes a la propiedad, incluyendo deudas, intereses, recargos o penalidades." En este caso, el Municipio de San Lorenzo impuso al señor Galarza Reyes tres (3) multas administrativas de $5,000.00 cada una, por concepto de **los gastos de limpieza** que el Municipio incurrió para rehabilitar la propiedad en litigio.[3] Surge del Expediente electrónico ante nuestra consideración, que dichas multas fueron impuestas en las fechas de 1 de octubre de 2022; 2 de enero de 2025; y 2 de abril de 2025.

Cabe señalar, que el Artículo 1.009 del Código Municipal dispone que en "el ejercicio de sus facultades para reglamentar, investigar, emitir decisiones, certificados, permisos, endosos y concesiones, **el municipio podrá imponer y cobrar multas administrativas de hasta un máximo de cinco mil (5,000) dólares** por infracciones a sus ordenanzas, resoluciones y reglamentos de aplicación general, conforme se establezca por ley u ordenanza." (Énfasis suplido). 21 LPRA sec. 7014. Asimismo, el Artículo 4.010 del Código Municipal establece el proceso de imposición de multas para los casos de propiedades declaradas estorbos públicos. En lo atinente, el referido Artículo lee como sigue:

> **Una vez emitida una declaración de estorbo público sobre una propiedad inmueble, el propietario vendrá obligado a limpiarla o ejecutar las obras necesarias para eliminar tal condición**, dentro del término de sesenta (60) días a partir de la notificación de la resolución. Si el propietario no realiza lo anterior, el municipio

---

[3] Véase, el anejo intitulado "Exhibit J Multa," Entrada Núm. 1 de SUMAC del TPI.

—teniendo entonces la facultad primaria sobre esa propiedad a tenor con el Artículo 1.008 de este Código— podrá realizar las obras necesarias para asegurar la salud y seguridad del público en general. **Para fines de este Artículo, obras necesarias son aquellas de reparación, limpieza, mantenimiento o demolición […]**

**En aquellos casos en que el municipio haya incurrido en el costo por la limpieza se le impondrá una multa trimestral al titular**, a ser pagada al municipio donde esté situada la propiedad inmueble, la cual será no menor de mil (1,000) dólares ni mayor de cinco mil (5,000) dólares.

[…]

**Esta multa será adicional al costo que conlleve la limpieza**, y de no efectuar el pago correspondiente dentro del término de sesenta (60) días de haber sido debidamente solicitado y notificado por el municipio, tal monto se incluirá dentro del gravamen hipotecario tácito que gravará la titularidad del inmueble correspondiente. **En casos en donde la propiedad no conste inscrita en el Registro de la Propiedad**, **dichos gastos y multas podrán ser incluidas en la demanda expropiación, si el municipio así lo desea**. (Énfasis suplido) 21 LPRA sec. 7634.

Cabe mencionar, que la *"Resolución"* mediante la cual el inmueble en controversia se declara estorbo público, contiene un apercibimiento sobre imposición de multas administrativas a tenor del aludido Artículo 4.010, *supra*. Así pues, el Municipio de San Lorenzo tiene facultad en ley para imponer multas al titular de la propiedad en litigio al amparo del referido Artículo, puesto que dicha finca fue declarada estorbo público. Asimismo, en el presente caso de expropiación forzosa el Municipio puede válidamente reclamar el pago de las multas impuestas, de conformidad al Código Municipal y a la Ley General de Expropiación Forzosa. En específico, la referida Ley permite que los gravámenes en concepto de multas y penalidades puedan deducirse del pago de la justa compensación.

Ahora bien, para que tal deducción sea procedente el Municipio debe cumplir con las disposiciones normativas aplicables. Entiéndase por ello, que la multa tendrá legitimidad siempre y cuando sea impuesta por la razón de que un municipio incurrió en algún gasto de limpieza con el fin de eliminar la condición de estorbo público. En este caso, el Municipio de San Lorenzo impuso las referidas tres (3) multas bajo el fundamento legítimo de los alegados gastos de limpieza en que incurrió. Sin embargo, **no surge del expediente del caso alguna prueba documental que certifique los**

**gastos de limpieza que ha llevado a cabo el Municipio de San Lorenzo para eliminar la condición de estorbo público del inmueble en disputa**.

Únicamente, obra en el expediente ante nos un "Informe de Gastos" a través del cual se desglosan una serie de cargos administrativos y de manejo del caso, los cuales **no contienen partidas relacionadas a gastos de reparación, limpieza o mantenimiento**. Siendo así, a pesar de que el Municipio de San Lorenzo tiene autoridad en ley para deducir de la justa compensación los gastos de mantenimiento y las multas administrativas, las referidas deducciones solamente procederán si se prueban legítimamente. Ante ello, son improcedentes las deducciones en concepto de multas por limpieza y de gastos de mantenimiento, según peticionadas por el Municipio de San Lorenzo, a menos que estas logren ser propiamente evidenciadas a tenor de las disposiciones del Código Municipal y la Ley de Expropiación Forzosa.

Es preciso resaltar, que la justa compensación que en su día se establezca mediante sentencia, deberá contemplar no solo las deducciones que cumplan con la ley y sean debidamente probadas, sino también el computo de intereses desde la fecha en que ocurrió la expropiación hasta la fecha en que el Municipio pague totalmente la compensación adjudicada. Puntualizamos, que "un demandado en un caso de expropiación no está en rebeldía sobre la cuestión de compensación porque deje de comparecer o contestar la demanda." *Pueblo v. 632 metros cuadrados de terreno,* 74 DPR 961, 974-975 (1953).

Así pues, una vez determinado que el Municipio de San Lorenzo no tiene un deber de consignar el justo valor hasta tanto comparezca al litigio la parte demandada-recurrida o en su defecto se dicte la correspondiente sentencia, y tras concluir que el referido Municipio tiene derecho a descontar de la justa compensación las deudas de contribución sobre la propiedad y los gastos de mantenimiento y multas por limpieza, que cumplan con las disposiciones legales aplicables y sean debidamente evidenciados, resolvemos que el foro primario no tiene impedimento para

continuar los procedimientos del caso y dictar la sentencia final que corresponda.

**IV.**

Por los fundamentos antes expuestos, los cuales hacemos formar parte de la presente determinación, concluimos *expedir* el auto de *certiorari* presentado y con ello *revocar* la determinación recurrida. En consecuencia, devolvemos el presente caso para la continuación de los procedimientos de conformidad con lo aquí resuelto.

**Notifíquese.**

Lo acordó y manda el Tribunal, y lo certifica la Secretaria del Tribunal de Apelaciones.

Lcda. Lilia M. Oquendo Solís
Secretaria del Tribunal de Apelaciones